OPINION
{¶ 1} Kyle J. Smith was convicted after a jury trial in the Greene County Court of Common Pleas of reckless homicide with a firearm specification. The court sentenced him to *Page 2 
four years in prison for reckless homicide, to be served consecutively to a mandatory term of three years in prison for the firearm specification. Smith appeals from his conviction, arguing that the court should have given a jury instruction for negligent homicide and that his counsel rendered ineffective assistance. For the following reasons, Smith's conviction will be affirmed.
 {¶ 2} According to the evidence presented at trial, Smith and the victim, Roni Spears, had an on again-off again romantic relationship. On November 25, 2005, the day after Thanksgiving, Spears spent the day shopping with her sister, Deatra Smith ("Deatra"), in the Cincinnati area. Because the battery for her cell phone was dead, she did not communicate with Smith during the day. When Deatra went to bed at 10:30 p.m., Spears was sitting on a loveseat in Deatra's home, watching a movie with other family members.
 {¶ 3} After Deatra had gone to bed, Spears made contact with Smith. According to Smith, the two began to argue about the father of Spears's five-year old son and/or whether she had been with another man that day. Although Smith had invited Spears to come to his residence, he broke off their relationship during the argument, and he told her not to come. Sometime thereafter, Spears and her son drove to Smith's apartment in Fairborn, Ohio. They arrived at approximately 12:30 a.m.
 {¶ 4} When Spears arrived, Smith did not want to let her into his apartment, but he let her enter because she had brought her son and it was cold outside. Spears pushed her way past Smith as she walked in the door. Once inside, Spears took off her son's coat, and he sat on the couch while the argument between Spears and Smith continued. Smith's neighbor, Marietta Gaynor, heard Spears yelling, crying, and cursing at Smith. The argument lasted approximately fifteen minutes. Gaynor was initially concerned that Spears was being a domestic violence *Page 3 
victim. She soon heard the sound of banging against the wall, and she called the police "because it sounded like it was getting out of hand." She then heard someone yell at someone else to go upstairs. According to Smith, Spears had grabbed and ripped his shirt, the two had "tussled," and Spears was shot with Smith's Bersa 40-caliber semiautomatic pistol. Spears stood for a moment and then fell to the floor. When Smith realized that Spears had been shot, he called 911 and ordered Spears's son to go upstairs. After the police arrived, Smith was taken into custody and transported to jail. Spears died from a gunshot wound to her chest. Spears also had a bruise behind her left ear and a slight injury to her lip.
 {¶ 5} After his arrest, Smith gave varying detailed accounts of what had happened after Spears arrived at his apartment. After being booked into the j ail, Smith told Officer James Hern that, when Spears and her son arrived, he remembered that his gun was on a computer table by the door, so he decided to pick it up and put it in the pocket of his jogging suit top. He then sat down on a chair in the living room while Spears argued with him. He and Spears continued to argue back and forth until Spears said that she was going to get some of her belongings. Smith had responded, "Go ahead." Spears wanted to get a telephone next to him. Smith stood up, and a physical altercation began. Spears and Smith tussled, the gun fell out of his pocket, and he caught it while it was falling. As they continued to fight, the gun went off and he accidentally shot Spears.
 {¶ 6} Detective Steven Jahns and Captain Doctor Plemmons subsequently interviewed Smith at 8:30 a.m. that morning. At this time, Smith initially stated that he was sitting in his desk chair when Spears came around the desk and tried to get between him and the desk. Spears grabbed his shirt and ripped it. In response, Smith grabbed the gun and told Spears to "leave me *Page 4 
alone." Smith stood up, and he and Spears tussled while going around the desk. Smith stated that he stepped back from Spears and the gun went off accidently. Smith indicated that he normally kept his gun on the desk, and he stated that it had never been in his pocket.
 {¶ 7} Although Smith first stated that the gun had been on the desk throughout the weekend, he later stated he had gotten the gun out that morning. As the interview progressed, Smith stated that he retrieved the weapon from upstairs "maybe an hour" before Spears arrived. He stated that he was worried about his safety but "the gun was already there before she got there." Later still, Smith stated that he had retrieved the gun from upstairs while Spears was taking off her son's coat. He repeatedly indicated that he intended the gun to be a deterrent. At the end of the interview, Smith stated that Spears had grabbed and ripped his shirt, that they had started tussling, and that he had grabbed the gun out of self-defense because Spears was swinging at him. Smith then cocked the gun and pulled the trigger. Smith consistently denied that he had shot Spears intentionally or that he had done so out of anger.
 {¶ 8} Smith's and Spears's hands were tested for gunshot residue. Smith had gunshot residue on his hands, but Spears did not. In addition, no gunpowder particles were found on Spears's leather jacket. The state's evidence indicated that Smith's weapon would deposit gunpowder particles out to two feet from the gun, thus suggesting that Spears was farther than two feet from the weapon when she was shot.
 {¶ 9} In his defense, Smith's expert did not agree that gunpowder particles would be present out to two feet from the gun when tested on a leather jacket. He testified that his tests revealed few gunshot particles on a leather jacket at 12 inches and that he could not conclude that the weapon would deposit particles at 18 inches from the gun. This testimony was *Page 5 
apparently intended to demonstrate that the absence of gunshot particles on Spears's jacket was not significant for determining whether Spears was close to Smith when she was shot. Smith also presented testimony from a Silverton police officer who had previously responded to a call in which Smith alleged that Spears had assaulted him. A former Silverton police officer also testified that, at Smith's request, he previously had been dispatched to escort Smith to Spears's residence so that Smith could retrieve his personal belongings. Gaynor also testified on behalf of Smith.
 {¶ 10} On December 1, 2005, Smith was indicted for murder, in violation of R.C. 2903.02(A); voluntary manslaughter, in violation of R.C. 2903.03(A); and reckless homicide, in violation of R.C. 2903.041. Each count included a firearm specification. The state subsequently dismissed the voluntary manslaughter charge. The remaining two charges were tried before a jury on March 20-22, 2006. Smith was convicted of reckless homicide with the firearm specification but acquitted of murder and the accompanying firearm specification. On April 21, 2006, the court filed a termination entry, sentencing him accordingly.
 {¶ 11} Smith raises four assignments of error on appeal, which we will address in a manner that facilitates our analysis.
 a."THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN REFUSING TO GIVE A JURY INSTRUCTION FOR NEGLIGENT HOMICIDE."
 b."THE TRIAL COURT'S FAILURE TO GIVE THE JURY INSTRUCTION FOR NEGLIGENT HOMICIDE WAS `PLAIN ERROR.'"
 {¶ 12} In his first and third assignments of error, Smith claims that the trial court erred when it failed to give a jury instruction on negligent homicide. *Page 6 
 {¶ 13} At the conclusion of Smith's case-in-chief, Smith's counsel requested an instruction on negligent homicide, arguing that it was a lesser included offense of reckless homicide and murder and that the evidence supported a finding that Smith had acted negligently at the time of the shooting. Citing State v. Koss (1990), 49 Ohio St.3d 213,551 N.E.2d 970, the trial court concluded that negligent homicide was not a lesser included offense of murder because negligent homicide "requires the additional element of negligently causing the death by means of a deadly weapon." The trial court applied the same reasoning to reckless homicide, noting that reckless homicide is identical to murder with the exception that murder requires purposefulness while reckless homicide requires recklessness.
 {¶ 14} On appeal, Smith again asserts that negligent homicide is a lesser included offense of reckless homicide and that the evidence presented at trial was consistent with negligent homicide. Smith further argues that the trial court erroneously concluded that negligence is an "additional element" to be proven because "`recklessly' and negligently are not distinct and exclusive elements."
 {¶ 15} Smith misconstrues the trial court's ruling on his request for an instruction on negligent homicide. The trial court did not deny Smith's request on the ground that negligence and recklessness were exclusive and distinct. Rather, it noted that negligent homicide requires the additional element of negligently causing the death bymeans of a deadly weapon. We find no fault with the trial court's ruling.
 {¶ 16} "A trial court must fully and completely give all instructions relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact-finder. State v. Comen (1990), 50 Ohio St.3d 206,553 N.E.2d 640. If under any reasonable view of the *Page 7 
evidence, it is possible to find the defendant not guilty of a greater offense with which he is charged and guilty of a lesser offense, the instruction on the lesser offense must be given. State v. Wengatz
(1984), 14 Ohio App.3d 316, 471 N.E.2d 185. Where the evidence in a criminal case would support a finding by the jury of guilt of a lesser offense included in the offense for which the Defendant was tried, it is prejudicial error for the trial court to refuse a defense request to instruct on the lesser offense. State v. Parra (1980),61 Ohio St.2d 236, 400 N.E.2d 885." State v. Young, Montgomery App. No. 19328, 2003-Ohio-1254, ¶ 9.
 {¶ 17} "An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense." State v. Deem (1988),40 Ohio St.3d 205, 533 N.E.2d 294, paragraph three of the syllabus.
 {¶ 18} Here, Smith was not entitled to a jury instruction on negligent homicide, because that offense is not a lesser included offense of either murder or reckless homicide.
 {¶ 19} R.C. 2903.02(A), which defines murder, provides: "No person shall purposely cause the death of another or the unlawful termination of another's pregnancy."
 {¶ 20} R.C. 2903.041, which defines reckless homicide, is identical to R.C. 2903.02(A), with the exception that it requires that "[n]o person shall recklessly cause the death of another or the unlawful termination of another's pregnancy." (Emphasis added). *Page 8 
 {¶ 21} In contrast, R.C. 2903.05, which sets forth the elements of negligent homicide, provides: "No person shall negligently cause the death of another or the unlawful termination of another's pregnancy by means of a deadly weapon or dangerous ordnance as defined in section2923.11 of the Revised Code."
 {¶ 22} Viewing the offenses as statutorily defined, an offender can commit murder and reckless homicide without committing negligent homicide. Specifically, a person can purposely or recklessly cause the death of another by means other than by a deadly weapon or dangerous ordnance. See Koss, 49 Ohio St.3d at 219. Consequently, negligent homicide is not a lesser included offense of murder or reckless homicide. Id.; State v. Florence, Montgomery App. No. 20439,2005-Ohio-4508, ¶ a57. Accordingly, the trial court did not commit error — plain or otherwise — when it refused to give a jury instruction on negligent homicide in this case. See also State v. Smith, Montgomery App. No. 21004, 2006-Ohio-4405 (no instruction on negligent homicide is required when the theory of the defense for murder charge is predicated on accident).
 {¶ 23} The first and third assignments of error are overruled.
 {¶ 24} "APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN TRIAL COUNSEL FAILED TO PRESERVE HIS OBJECTION TO JURY INSTRUCTIONS PER OHIO RULE OF CRIMINAL PROCEDURE 31(C)."
 {¶ 25} "APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL COUNSEL FAILED TO PLEAD OR ARGUE SELF-DEFENSE HEREIN."
 {¶ 26} In his second and fourth assignments of error, Smith claims that his trial *Page 9 
counsel rendered ineffective assistance by failing to preserve his objection to the trial court's refusal to instruct on negligent homicide. He further asserts that his trial counsel was ineffective in failing to argue self-defense.
 {¶ 27} In order to demonstrate ineffective assistance of counsel, Smith must establish that his counsel's representation fell below an objective standard of reasonableness and that he has been prejudiced by his counsel's deficient performance. Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373. "Reversal of a conviction for ineffective assistance of counsel `requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" State v. Hand107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d. 151, at ¶ 199. Moreover, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland,466 U.S at 694; Bradley, 42 Ohio St.3d at 142.
 {¶ 28} Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. SeeStrickland, 466 U.S. at 689. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. Id.;State v. Parker, Montgomery App. No. 19486, 2003-Ohio-4326, ¶ 13.
 {¶ 29} In the present case, Smith clearly was not prejudiced by his counsel's *Page 10 
failure to renew his objection to the court's refusal to provide a jury instruction on negligent homicide. As discussed supra, Smith was not entitled to such an instruction. Accordingly, this argument is without merit.
 {¶ 30} We also find no basis to conclude that Smith's trial counsel rendered ineffective assistance when he pursued an accident defense rather than a defense based on self-defense.
 {¶ 31} Under Ohio law, self-defense is an affirmative defense for which the defendant bears the burden of proof. Because it functions as an admission and avoidance, as affirmative defenses do, a claim of self-defense presupposes that the alleged crime took place. State v.Kucharski, Montgomery App. No. 20815, 2005-Ohio-6541, ¶ 16. In order for Smith to have established self-defense, he would have been required to show the following elements: (1) he was not at fault in creating the situation giving rise to the affray, (2) he had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from the danger was in the use of force, and (3) he did not violate any duty to retreat or avoid the danger. State v.Melchior (1978), 56 Ohio St.2d 15, 10 O.O.3d 8, 381 N.E.2d 195;State v. Taylor, ___ Ohio App.3d ___, 2007-Ohio-1346, ___ N.E.2d ___, ¶ 23. The "not at fault" requirement also means that Smith must not have been the first aggressor in the incident. Taylor at ¶ 23.
 {¶ 32} A person's use of force in self-defense is necessarily a purposeful act. Implicitly, then, force that occurs accidentally does not qualify to be treated as self-defense. State v. Marbury, Montgomery App. No. 19226, 2004-Ohio-1817, ¶ 16. In other words, the defenses of accident and self-defense are mutually exclusive *Page 11 
concepts. State v. Barnd (1993), 85 Ohio App.3d 254, 260,619 N.E.2d 518; Florence at ¶ 49.
 {¶ 33} The evidence does not readily support a conclusion that Smith had a bona fide belief that he was in danger of death or great bodily harm such that deadly force was justified. During his interview with Jahns and Plemmons, Smith stated that Spears was unarmed. Although he also indicated that Spears was assaulting him with her hands, that she was a formidable woman (5' 9" and 190 pounds), and that he was afraid for his safety, there is no evidence in the record to support a conclusion that Smith believed that Spears would or could inflict great bodily harm or death.
 {¶ 34} Moreover, although Smith's version of the events of November 26 varied, he repeatedly asserted that he had the gun as a deterrent and that he had shot Spears accidently. He contended that he did not shoot her purposefully. Indeed, on appeal, Smith states that "the evidence herein does not indicate that Smith purposefully used deadly force. Rather, Smith arguably brandished a firearm (deadly force) as a deterrent . . . a means of `ejecting' a trespasser. The fact that the firearm was discharged was due to accident or negligence."
 {¶ 35} In light of the evidence, Smith's trial counsel pursued a reasonable trial strategy when he argued that the shooting had been accidental rather than based on self-defense. We see no basis for second-guessing his counsel's decision. To the contrary, the record reveals that Smith's counsel presented an admirable defense under the circumstances. Counsel was not ineffective in failing to argue self-defense rather than that the shooting was accidental.
 {¶ 36} The second and fourth assignments of error are overruled. *Page 12 
 {¶ 37} The judgment of the trial court will be affirmed.
 FAIN, J. and DONOVAN, J., concur. *Page 1