OPINION
{¶ 1} Defendant, Cedric Marbury, appeals from his convictionfor felonious assault and kidnaping, both with gunspecifications, and the resulting terms of imprisonment the trialcourt imposed.
 {¶ 2} Evidence which the State introduced at trialdemonstrates that on the afternoon of October 13, 1999, as TerryBell drove down Haney Road in Trotwood on his way to the DairyMart located at the corner of Wolf and Haney, he observedDefendant inside his garage. Bell stopped and called out toDefendant, and the two men talked about the ongoing feud betweenDefendant and Bell's family. Following this conversation, Bellwent on the Dairy Mart where he purchased an item for a cook-outat the home of Jimmy Keith.
 {¶ 3} After Keith informed Bell that he had purchased thewrong item for their cookout, Bell returned to the Dairy Mart. AsBell drove past Defendant's house, Defendant ran out into themiddle of the street and flagged Bell down. When Bell stopped,Defendant approached the vehicle, reached inside, and turned offthe engine. As Bell started to exit the vehicle, Defendantreached behind his back and pulled a gun, then pointed it insidethe vehicle and shot Bell. The bullet struck Bell's spine,paralyzing him from the waist down. Defendant then punched Belland told him to move over in the seat because he was going tokidnap and kill him.
 {¶ 4} Defendant got into the driver's seat of Bells' vehicle,started the car, and began to drive away. Bell and Defendant thenfought over control of the car. At the intersection of Haney andWolf, in front of the Dairy Mart, Bell was able to force the carover into the curb. Bell then crawled out the passenger door andfell onto the street, where he tried unsuccessfully to stoppassing motorists. Meanwhile, Defendant exited the vehicle andbegan hitting and kicking Bell.
 {¶ 5} The manager of the Dairy Mart, Charles Eagle, and hisemployee, Rhiannon Vonada, notice a car parked at an odd anglenear the intersection, and two men fighting. They also observedBell fall out of the passenger door onto the street. Eagle andVonada recognized Bell as a man who had been in their storeearlier. Eagle and Vonada watched Bell drag himself to the centerof the street and saw Defendant pursue him and stomp and kickBell as he lay in the street. Eagle called police and then wentoutside and told Defendant, Marbury, whom he recognized as one ofhis regular customers, that police were on their way. Vonadaobserved Defendant walk over to the car, retrieve something fromthe passenger floor, stick it in his front waistband underneathhis shirt, and then walk away down Haney Road. Eagle remainedwith Bell until police and paramedics arrived.
 {¶ 6} Defendant's evidence portrays a much different versionof events, suggesting that Bell was the initial aggressor andinitiated the confrontation with Defendant.
 {¶ 7} According to Defendant's evidence, he was in his garagewhen Bell parked his vehicle in the street across the bottom orapron of Defendant's driveway. Bell argued with and threatenedDefendant. As Defendant walked down his driveway toward Bell'svehicle, Bell pulled a gun and pointed it at Defendant, whoresponded by yelling "gun" and jumping into the vehicle on top ofBell in order to protect himself. Bell and Defendant physicallystruggled for control of the gun as the vehicle slowly rolleddown the street. During that struggle the gun discharged. The twomen continued fighting until Defendant finally gained controlover the gun at the intersection of Haney and Wolf. Defendantthen exited the vehicle and walked back home.
 {¶ 8} Defendant was indicted on one count of feloniousassault, R.C. 2903.11(A)(2), and one count of kidnaping, R.C.2905.01(B)(1). Both charges included a gun specification. R.C.2941.145. Pursuant to a plea agreement, Defendant pled no contestto the felonious assault charge and was found guilty. Inexchange, the State dismissed the kidnaping charge and both gunspecifications. Prior to sentencing, however, Defendant moved towithdraw his plea. Following a hearing, the trial court grantedDefendant's motion and allowed him to withdraw his plea.
 {¶ 9} This matter proceeded to a jury trial. At the conclusionof the trial the jury found Defendant guilty on both charges andthe gun specifications. The trial court sentenced Defendant toconcurrent prison terms of seven years for felonious assault andfive years for kidnaping. The trial court merged the two gunspecifications and imposed one additional and consecutive threeyear prison term, for a total sentence of ten years.
 {¶ 10} Defendant timely appealed to this court. His appellatecounsel filed an Anders brief, Anders v. California (1967),386 U.S. 738, claiming that he could not find any meritoriousissues for appellate review. We concluded, however, that at leastone potential issue for appeal was not frivolous, and accordinglywe set aside the Anders brief and appointed new appellatecounsel for Defendant. State v. Marbury (June 20, 1003),Montgomery App. No. 19226. This matter is now before the courtfor disposition on the merits of Defendant's appeal.
 FIRST ASSIGNMENT OF ERROR {¶ 11} "The appellant was deprived of due process of law and afair trial by the trial court's refusal to instruct the jury onthe issue of self-defense."
 {¶ 12} Defendant argued that he acted in self-defense when hetried to take Bell's gun away from him. If the jury agreed, thefinding would relieve Defendant of criminal liability on thecharge of felonious assault arising from the gunshot injury Bellsuffered when, according to Defendant, the gun accidentallydischarged in the course of their struggle.
 {¶ 13} The burden of proof for an affirmative defense is thepreponderance of evidence standard, and the burden is on theaccused who pleads self-defense. R.C. 2901.05(A). "To establishself-defense, the following elements must be shown: (1) the(accused) was not at fault in creating the situation giving riseto the affray; (2) the (accused) has a bona fide belief that hewas in imminent danger of death or great bodily harm and that hisonly means of escape from such danger was in the use of suchforce; and (3) the (accused) must not have violated any duty toretreat or avoid the danger." State v. Melchior (1978),56 Ohio St.2d 15, 20-21. (Citations omitted.)
 {¶ 14} The trial court instructed the jury on self-defense perMelchior. The Defendant requested a further instruction withrespect to the third prong of Melchior; that he had no duty toretreat from the affray because he was on his own property. Thetrial court declined to give the instruction the Defendantrequested. Defendant argues that the trial court abused itsdiscretion.
 {¶ 15} The State argues that any error was harmless becauseDefendant was not entitled to a self-defense instruction. TheState points out that the felonious assault charge to which theself-defense claim relates arises from the victim's gunshotinjury. Because the Defendant claims that the gun firedaccidentally in the course of his struggle with the victim,according to the State the Defendant's claim of accident negateshis right to argue self-defense.
 {¶ 16} Implicit in the State's argument is a view that,because a person's use of force in self-defense is necessarily apurposeful act, force that occurs accidentally doesn't qualifyfor self-defense. We agree with that view. However, Defendantdidn't claim that he shot the victim in self-defense. Rather, heclaims that he jumped into the victim's car to take his gun awayin order to defend himself from being shot. The fact that the gundischarged accidentally in the course of that affray, asDefendant claims, does not negate his right to claim self-defensewith respect to the force he used that led to the claimedaccidental discharge.
 {¶ 17} With respect to the particular "no duty to retreat"instruction Defendant requested, we find no abuse of discretionin the trial court's refusal to give it. Defendant asked thecourt to instruct the jury that "if you find the defendant was onhis own property at the inception of the incident alleged in theindictment, there was not [a] legal duty to retreat, escape orwithdraw imposed on this Defendant."
 {¶ 18} The instruction Defendant requested relates to thegeneral principle recognized many years ago in State v. Peacock(1883), 40 Ohio St. 333, that one has no duty to retreat from his"home." The rule also applies with respect to an equivalentabode. See State v. Jackson (1986), 22 Ohio St.3d 281; Statev. Williford (1990), 49 Ohio St.3d 247.
 {¶ 19} The rule that one who is attacked or threatened withattack has no duty to retreat from his home is founded on twoconcerns. One is that the home is a sanctuary from harm, suchthat being in the home confers an exception to the duty toretreat from harm that might be inflicted there. The other isthat, being a confined space in most circumstances, an actor'sability to retreat is greatly diminished when he is inside hishome.
 {¶ 20} Defendant was not in his "home" when he was allegedlythreatened by the victim and used force to repel the threat. Hewas outside his home, on the driveway. Courts have held that theexception to the no duty to retreat rule does not then apply,because the actor is neither in his home nor is his home beingattacked. State v. Moore (1994), 97 Ohio App.3d 137; Clevelandv. Hill (1989), 63 Ohio App.3d 194. The same might not apply,however, when the defendant is on the porch steps, State v.Jackson (1986), 22 Ohio St. 281, or standing at his owndoorstep, State v. Reid (1965), 3 Ohio Ap.2d 215.
 {¶ 21} On this record, we cannot find that the trial courtabused its discretion when it denied Defendant's requestedinstruction that he had no duty to retreat because he was "on hisown property." The place from which he launched his attack torepel the use of force the victim allegedly threatened to useagainst him was not within or at his abode, such that he had aright to repel the force without instead retreating from it.
 {¶ 22} This is not to say that the Defendant might not havebeen entitled to a no duty to retreat instruction for otherrelevant reasons. The retreat rule applies only to the use ofdeadly force; a defender may use non-deadly force withoutretreating. Columbus v. Dawson (1986), 33 Ohio App.3d 141. Theforce Defendant used to take away a gun he claims he believed thevictim had was non-deadly force. Also, retreat is required onlywhen the defendant can do so in complete safety. State v.Cassano, 96 Ohio St.3d 2002-Ohio-3751. While Cassano appliedthe rule to being in a confined space, where no escape ispossible, the exception might also apply when a defendant isthreatened with a gun. Unlike a knife or a club, which present arisk of harm that can be avoided by retreat, running away from aperson who brandishes a gun generally offers little or noopportunity for complete safety. Cassano.
 {¶ 23} Defendant did not request a no duty to retreatinstruction on these other grounds, however. Failure to make therequest waives any error in not giving it, except for plainerror. State v. Underwood (1983), 3 Ohio St.3d 12. Plain errordoes not exist unless, but for the error, the outcome of thetrial clearly would have been otherwise. State v. Long (1978),53 Ohio St.2d 91. On this record, and applying that standard, wefind no plain error. Neither do we find that the failure torequest those particular instructions prejudiced the defendant tosuch an extent that, absent the defect, the factfinder would havehad a reasonable doubt respecting guilty, such that ineffectiveassistance of trial counsel is shown. Strickland v. Washington(1984), 466 U.S. 668.
 {¶ 24} The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR {¶ 25} "The trial court erred to the prejudice of theappellant by ruling an unauthenticated, hearsay 911 call wasadmissible, as the court denied the appellant his Sixth Amendmentand Section 10, Article 1 of the Ohio Constitution rights toconfrontation and cross-examination."
 {¶ 26} During the trial the State presented as substantiveevidence of what happened a tape recording of a 911 emergencycall made by a woman, who is heard to tell police she had justwitnessed a shooting. The caller goes on to describe the eventsshe witnessed, but does not identify herself by name. The Stateclaimed that the 911 caller was Christy Roberson, one of itswitnesses who testified at trial. During her direct examination,Roberson testified that as she was walking down Haney Road on herway to a friend's house, she heard a loud noise, a big boom,looked up, heard arguing, and then saw a station wagon drive offdown the street. When asked by the prosecutor if she recognizedher voice on the 911 tape, Roberson did not deny making the 911call but claimed that she could not say for sure that her's wasthe voice heard because she didn't specifically remember makingthe call. Roberson admitted, however, that the address and phonenumber given by the 911 caller belonged to her. Defendant waivedhis right to cross-examine Roberson, and she was excused.
 {¶ 27} The lead investigator in this case, Det. Glasser,testified at trial that he had interviewed Christy Roberson forover an hour at the police station and also talked to her in thehallway of the courthouse during this trial. Det. Glasser statedthat he recognized the voice on the 911 tape as ChristyRoberson's voice. The trial court then admitted the tape of the911 call, over Defendant's objections, pursuant to hearsayexceptions for present sense impression and excited utterances.The 911 call was then played for the jury.
 {¶ 28} Defendant now argues that because the 911 caller wasnever identified, there was no proper foundation laid foradmitting that hearsay evidence and, furthermore, that he wasprevented from cross-examining the caller. Thus, Defendant claimsthat the trial court's admission of this hearsay was an abuse ofdiscretion that denied him his confrontation rights under theSixth Amendment to the United States Constitution, and Article I,Section 10 of the Ohio Constitution.
 {¶ 29} The decision whether to admit or exclude evidence restswithin the sound discretion of the trial court and its decisionin such matters will not be reversed on appeal absent an abuse ofdiscretion and material prejudice. State v. Apanovitch (1987),33 Ohio St.3d 19, 25. An abuse of discretion means more than amere error of law or an error in judgment. It implies anarbitrary, unreasonable, unconscionable attitude on the part ofthe court. State v. Adams (1980), 62 Ohio St.2d 151.
 {¶ 30} Evid.R. 901 provides in relevant part:
 {¶ 31} "(A) General provision. The requirement ofauthentication or identification as a condition precedent toadmissibility is satisfied by evidence sufficient to support afinding that the matter in question is what its proponentclaims.
 {¶ 32} "(B) Illustrations. By way of illustration only, andnot by way of limitation, the following are examples ofauthentication or identification conforming with the requirementsof this rule:
 {¶ 33} "* * *
 {¶ 34} "(5) Voice identification. Identification of a voice,whether heard firsthand or through mechanical or electronictransmission or recording, by opinion based upon hearing thevoice at any time under circumstances connecting it with thealleged speaker."
 {¶ 35} Although Christy Roberson could not confirm that shewas the 911 caller, she didn't deny making the call. She simplysaid that she couldn't be sure it was her voice because shedoesn't remember making the call. Roberson admitted that thephone number and address given by the 911 caller belonged to her.Det. Glasser was able to identify the voice on the 911 tape asChristy Roberson's, based upon hearing her voice at other timeswhen he talked to her in person.
 {¶ 36} We conclude that this evidence was sufficient toidentify the caller and permit the court to conclude that ChristyRoberson was the 911 caller. In other words, sufficient evidencewas presented to satisfy the threshold showing required byEvid.R. 901(A) that the matter in question is what its proponentclaims: in this instance a 911 call made by Christy Roberson.
 {¶ 37} We further conclude, although Defendant does notspecifically argue this matter, that the trial court properlyadmitted this hearsay evidence (the 911 call was offered by theState to prove the truth of what the caller had said) under thehearsay exception for excited utterances. Evid.R. 803(2). All ofthe foundational requirements for admission of this 911 call asan excited utterance were satisfied in this case: the existenceof a startling or shocking event, the declarant possessed firsthand knowledge of that event and was under the stress orexcitement caused by the event when her statement was made, andthe declarant's statement relates to that startling event.Weissenberger, Ohio Evidence (2004), at 450-460.
 {¶ 38} As a final matter, we note that the United StatesSupreme Court recently held that, in a criminal case, the indiciaof reliability standards which underlied the exceptions to therule against hearsay are insufficient to protect the specificrights which the Confrontation Clause confers, which can besatisfied only by cross-examination of the declarant, either attrial or in a prior proceeding in which the declaration was madewherein the declarant testified under oath. Crawford v.Washington (Mar. 8, 2004), No. 02-9410, 2004WL413301. The courtfurther held, however, that "when the declarant appears forcross-examination at trial, the Confrontation Clause places noconstraints at all on the use of his prior (hearsay) statements.The Clause does not bar admission of a statement so long as thedeclarant is present at trial to defend or explain it." Id.,Fn. 9 (citations omitted).
 {¶ 39} The court admitted evidence of the 911 caller'sout-of-court statements as the declaration of Christy Roberson,and there was sufficient evidence from which the jury could findthat Roberson was the declarant. Roberson appeared and testifiedunder oath. She was available for cross-examination concerningher declaration, which satisfies the rule set out in Crawford.Defendant declined to cross-examine Roberson, waiving his rightto complain of a Crawford violation.
 {¶ 40} We find no abuse of discretion on the part of the trialcourt in admitting the 911 call, and no violation of Defendant'sconfrontation rights.
 {¶ 41} The second assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR {¶ 42} "The trial court abused its discretion when it refusedto grant the appellant's motion(s) for mistrial."
 {¶ 43} The decision whether to grant or deny a motion formistrial lies within the sound discretion of the trial court, andits decision will not be reversed on appeal absent an abuse ofdiscretion that has adversely affected substantial rights of theaccused such that a fair trial is not longer possible. State v.Garner, 74 Ohio St.3d 49, 1995-Ohio-168; State v. Glover(1988), 35 Ohio St.3d 18; State v. Reynolds (1988),49 Ohio App.3d 27.
 {¶ 44} Defendant moved for a mistrial after the trial courtadmitted the tape recording of the 911 call into evidence.According to Defendant, the trial court abused its discretion inadmitting this evidence because the caller was not identified,and therefore this 911 call was not properly authenticated.Furthermore, because the 911 caller was not identified, Defendantwas deprived of his right to confront and cross-examine thecaller and test the reliability of her statements.
 {¶ 45} Hearsay is defined as an out-of-court declaration by a"person." Evid.R. 801(B). That necessarily implies that thedeclarant must be identified. As we discussed in overruling theprevious assignment of error, the evidence presented wassufficient to identify Christy Roberson as the 911 caller. Thus,a proper foundation was laid to satisfy Evid.R. 901(A) foradmission of Roberson's 911 call, and that hearsay evidence wasproperly admitted by the court as an excited utterance pursuantto Evid.R. 803(2). Accordingly, the trial court did not abuse itsdiscretion in admitting the 911 call. Furthermore, becauseChristy Roberson was identified as the 911 caller and testifiedat trial, and because Defendant had the opportunity to confrontand cross-examine Roberson, which he declined to do, Defendantwas not deprived of his Confrontation Clause rights. Crawford.
 {¶ 46} In any event, in reviewing the trial transcript andparticularly those portions dealing with the admission of thetape recording of the 911 call, we have not discovered any motionfor mistrial made by Defendant based upon the trial court'sadmission of the 911 call.
 {¶ 47} The third assignment of error is overruled.
 FOURTH ASSIGNMENT OF ERROR {¶ 48} "Appellant's convictions were against the manifestweight of the evidence and not supported by sufficientevidence."
 {¶ 49} A sufficiency of the evidence argument challengeswhether the State has presented adequate evidence on each elementof the offense to allow the case to go to the jury or sustain theverdict as a matter of law. State v. Thompkins,78 Ohio St.3d 380, 1997-Ohio-52. The proper testto apply to such an inquiry is the one set forth in paragraph twoof the syllabus of State v. Jenks (1991),61 Ohio St.3d 259
 {¶ 50} "An appellate court's function when reviewing thesufficiency of the evidence to support a criminal conviction isto examine the evidence admitted at trial to determine whethersuch evidence, if believed, would convince the average mind ofthe defendant's guilt beyond a reasonable doubt. The relevantinquiry is whether, after viewing the evidence in a light mostfavorable to the prosecution, any rational trier of fact couldhave found the essential elements of the crime proven beyond areasonable doubt."
 {¶ 51} Defendant was convicted of felonious assault inviolation of R.C. 2903.11(A)(2), which provides:
 {¶ 52} "No person shall knowingly do either of the following:
 {¶ 53} "Cause or attempt to cause physical harm to another orto another's unborn by means of a deadly weapon or dangerousordnance.
 {¶ 54} "Knowingly" is defined in R.C. 2901.22(B):
 {¶ 55} "A person acts knowingly, regardless of purpose, whenhe is aware that his conduct will probably cause a certain resultor will probably be of a certain nature. A person has knowledgeof circumstances when he is aware that such circumstancesprobably exist."
 {¶ 56} Defendant argues that because his evidence shows thatthe gun accidentally discharged while he and Bell werestruggling, the evidence is insufficient to prove that he"knowingly" caused physical harm to Bell. We disagree.
 {¶ 57} Bell testified at trial that after Defendant flaggedhim down in the street and he stopped, Defendant reached insideBell's vehicle and turned the engine off. Defendant then reachedbehind his back, pulled out a gun, reached back inside thevehicle again, and shot Bell in his lower left side. Thatevidence, if believed, is sufficient to convince the average mindof Defendant's guilt beyond a reasonable doubt. Viewing Bell'stestimony in a light most favorable to the State, as we must do,a rational trier of fact could find that Defendant knowinglycaused physical harm to Bell by means of a deadly weapon, andthus is guilty of felonious assault.
 {¶ 58} Defendant was also convicted of kidnaping in violationof R.C. 2905.01(B)(1), which provides:
 {¶ 59} "No person, by force, threat, or deception, or, in thecase of a victim under the age thirteen or mentally incompetent,by any means, shall knowingly do any of the following, undercircumstances that create a substantial risk of serious physicalharm to the victim or, in the case of a minor victim, undercircumstances that either create a substantial risk of seriousphysical harm to the victim or cause physical harm to thevictim:
 {¶ 60} "Remove another from the place where the other personis found"
 {¶ 61} Bell testified at trial that after Defendant shot him,Bell asked Defendant to release him to get help. Defendantrefused and told Bell to move over in the seat because Defendantwas about to kidnap and kill Bell. Defendant then punched Bell,got into the driver's seat of Bell's vehicle, and began drivingdown the street. At that point Bell and Defendant beganstruggling over control of the vehicle.
 {¶ 62} Viewing that evidence in a light most favorable to theState, a rational trier of facts could find that all of theelements of kidnaping have been proved beyond a reasonable doubt.Defendant's convictions are supported by legally sufficientevidence.
 {¶ 63} A weight of the evidence argument challenges thebelievability of the evidence, and asks which of the competinginferences suggested by the evidence is more believable orpersuasive. State v. Hufnagle (Sept. 6, 1996), Montgomery App.No. 15562, unreported. The proper test to apply to that inquiryis the one set forth in State v. Martin (1983),20 Ohio App.3d 172, 175:
 {¶ 64} "[t]he court, reviewing the entire record, weighs theevidence and all reasonable inferences, considers the credibilityof witnesses and determines whether in resolving conflicts in theevidence, the jury lost its way and created such a manifestmiscarriage of justice that the conviction must be reversed and anew trial ordered." Accord: State v. Thompkins,78 Ohio St.3d 380, 1997-Ohio-52.
 {¶ 65} The evidence presented by Defendant, particularly hisstatement to police and the testimony by Latea Darden, creates aconflict with the victim's testimony as to what transpired.Defendant argues that the guilty verdicts are against themanifest weight of the evidence because Bell's testimony is notworthy of belief due to his criminal record, the history ofproblems between Bell's family and Defendant, and Bell's offer toDefendant in this case to not testify against him in exchange fora large sum of money. The credibility of the witnesses, however,and the weight to be given to their testimony, are matter for thetrier of facts to resolve. State v. DeHass (1967),10 Ohio St.2d 230.
 {¶ 66} According to Bell, Defendant stopped Bell's vehicle inthe street, pulled out a gun, reached Bell's vehicle and shotBell. Defendant then told Bell that he was going to kidnap andkill him, and Defendant got into Bell's vehicle and began drivingdown the street. Bell and Defendant physically struggled overcontrol of Bell's vehicle.
 {¶ 67} According to Defendant's evidence on the other hand,Bell was the aggressor and initiated the confrontation withDefendant. Bell parked his vehicle across the apron ofDefendant's driveway and began threatening Defendant who was inhis garage. As Defendant walked down his driveway toward Bell'svehicle, Bell pulled out a gun and pointed it at Defendant.Defendant then jumped inside Bell's vehicle and struggled withBell over control of that gun as Bell's vehicle rolleduncontrolled down the street. During that struggle the gunaccidentally discharged.
 {¶ 68} This case is a credibility contest: Bell's version ofthe events versus Defendant's version. One witness, ChristyRoberson, corroborated Bell's story. Another witness, LateaDarden, corroborated Defendant's story. In State v. Lawson(Aug. 22, 1997), Montgomery App. No. 16288, this court observed:
 {¶ 69} "[b]ecause the factfinder . . . has the opportunity tosee and hear the witnesses, the cautious exercise of thediscretionary power of a court of appeals to find that a judgmentis against the manifest weight of the evidence requires thatsubstantial deference be extended to the factfinder'sdeterminations of credibility. The decision whether, and to whatextent, to credit the testimony of particular witnesses is withinthe peculiar competence of the factfinder, who has seen and heardthe witness." Id., at p. 4.
 {¶ 70} This court will not substitute its judgment for that ofthe trier of facts on the issue of witness credibility unless itis patently apparent that the trier of facts lost its way inarriving at its verdict. State v. Bradley (Oct. 24, 1997),Champaign App. No. 97-CA-03.
 {¶ 71} The jury in this case did not lose its way simplybecause it chose to believe Bell's version of the events ratherthan Defendant's, which it was entitled to do. In reviewing thisrecord as a whole, we cannot say that the evidence weighs heavilyagainst a conviction, that the jury lost its way, or that amanifest miscarriage of justice has occurred. Defendant'sconvictions are not against the manifest weight of the evidence.
 {¶ 72} The fourth assignment of error is overruled. Thejudgment of the trial court will be affirmed.
 Judgment affirmed.
 Fain, P.J., and Wolff, J., concur.