[Cite as *State v. Hunter*, 2011-Ohio-4669.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO                    :
                                 :      Appellate Case No. 24235
      Plaintiff-Appellee         :
                                 :      Trial Court Case Nos. 08-CR-1076
v.                               :                          10-CR-591
                                 :
MAE F. HUNTER                    :      (Criminal Appeal from
                                 :       Common Pleas Court)
      Defendant-Appellant        :
                                 :
                        . . . . . . . . . . .

O P I N I O N

Rendered on the 16th day of September, 2011.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by TIMOTHY J. COLE, Atty. Reg. #0084117, Montgomery
County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O.
Box 972, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

JAMES S. ARMSTRONG, Atty. Reg. #0020638, 131 North Ludlow Street, Suite 386 Talbott
Tower, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, J.

{¶ 1}  Defendant-appellant Mae Hunter appeals from her conviction and sentence,
following a jury trial, for Felonious Assault.  She contends that her trial counsel was
constitutionally ineffective for having failed to argue, or seek an instruction on, self-defense in
her Felonious Assault trial.  We conclude that the evidence in the record, after resolving

conflicts in testimony in Hunter's favor, and viewing that evidence in a light most favorable to Hunter, demonstrates no substantial likelihood that a defense of self-defense, if one had been presented to the jury, would have succeeded. Accordingly, the judgment of the trial court is Affirmed.

I

{¶ 2} Hunter and Monica Smoot were involved in an altercation in the women's restroom of Chuck's Jazz Lab, a club in Dayton that served alcoholic beverages and featured karaoke. Besides Hunter and Smoot, there were two other women in the restroom at the time. One of them, Yolanda Burch, testified, along with Hunter and Smoot. The other woman present at the time did not testify.

{¶ 3} According to Smoot and Burch, when Smoot brushed up against Hunter in the cramped bathroom, Hunter became irate, calling Smoot a "b*tch." Smoot walked into one of the two stalls and closed the door to use the toilet. As Smoot was using the facilities, Hunter yelled, "I'm going to kill you," and kicked in the door of the stall. The stall door hit Smoot in the head, causing her to fall to the floor and hit her head on the toilet. Smoot attempted to stand, but as a result of being partially disrobed, was not able to do so. The two women were grabbing each others' hair when Hunter punched Smoot in the face with a closed fist. While Smoot was on the floor, Hunter kicked her two or three times.

{¶ 4} Burch then pulled Hunter off of Smoot, who was able to stand. Hunter grabbed a beverage glass, which was between the two sinks in the bathroom, and threw it at Smoot's face, hitting Smoot on the bridge of her nose. Smoot began bleeding profusely. She was treated at Miami Valley Hospital for severe cuts to her nose, eyes, ear, lip, and

eyebrow, which required sixty stitches and surgery, and which caused "extreme pain."

{¶ 5}   Hunter gave a substantially different account of the altercation.   According to her, Smoot came up behind her in the bathroom and started screaming "ah."   Hunter went to the door to leave the bathroom.   As Hunter reached for the doorknob, Smoot pushed her and "that's when we started fighting.   She never made it to no stall, never.   We was right there."

{¶ 6}   Hunter admitted to having kicked Smoot while Smoot was on the ground. Concerning the thrown glass, Hunter testified:

{¶ 7}   "She reached for them keys.   They had some mace on them.   And I threw the glass.   The glass hit the wall and by that time my daughter was behind me.   She said, 'Mommy, come on, let's go.'   I left.   She started reaching for the keys, reaching for something, started reaching for some – you know, some females got keys with mace and stuff on them.

{¶ 8}   "She started reaching for it.   And I threw the glass.   We were so far apart.   I threw the glass.   The glass hit the wall.   The glass was a little shot glass.   Hit the wall because they ran out of glasses in the club, so the only glass that they could give me was a small four ounce glass.   The glass hit the wall. * * * ."

{¶ 9}   Hunter denied that she intended to hit Smoot in the face with the glass.   "I never meant for it to shatter and cut her in her face."

{¶ 10} Hunter was charged with Felonious Assault.   Following a jury trial, she was found guilty.   She was sentenced to three years in prison, to be served concurrently with an eleven-month sentence on a prior conviction for Passing a Bad Check.   From her conviction and sentence, Hunter appeals.

II

{¶ 11} Hunter's sole assignment of error is as follows:

{¶ 12} "APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL DUE TO COUNSEL'S FAILURE TO PROSECUTE THE AFFIRMATIVE DEFENSE OF SELF-DEFENSE AND FAILING TO REQUEST A JURY INSTRUCTION FOR SELF-DEFENSE."

{¶ 13} R.C. 2903.11(A)(1) proscribes Felonious Assault, as follows:

{¶ 14} "(A) No person shall knowingly do either of the following:

{¶ 15} "(1) Cause serious physical harm to another or to another's unborn;

{¶ 16} " * * * ."

{¶ 17} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶ 18} Hunter's defense to the jury was that she did not intend the injury to Smoot's face – in other words, that she did not knowingly cause serious physical injury, because she was not aware that her act of throwing the glass against the wall would probably cause the harm.

{¶ 19} The State contends that this defense, which is arguably made out by Hunter's testimony, if the jury were to have found her testimony credible, is inconsistent with the defense of self-defense, which assumes that the defendant intended the consequences of her act. The State cites *State v. Marbury*, Montgomery App. No. 19226, 2004-Ohio-1817, for

that proposition.

{¶ 20} A close examination of *State v. Marbury* discloses that the two defenses are not always inconsistent. In that case, the "Defendant didn't claim that he shot the victim in self-defense. Rather, he claim[ed] that he jumped into the victim's car to take his gun away in order to defend himself from being shot. The fact that the gun discharged accidentally in the course of that affray, as Defendant claims, does not negate his right to claim self-defense with respect to the force he used that led to the claimed accidental discharge." Id., at ¶ 16.

{¶ 21} In the case before us, Hunter contends that Smoot was injured as an unintended, and not knowingly probable, consequence of her having thrown the glass at the wall. If she could reasonably argue that her act of throwing the glass at wall was in self-defense, her defense of self-defense would not necessarily have been inconsistent with the defense that she did not knowingly cause serious physical harm to Smoot.

{¶ 22} The problem is that the evidence in this record, even when resolving conflicts in the testimony in Hunter's favor and viewing that evidence in a light most favorable to Hunter, does not reasonably support a defense of self-defense. " 'To establish self-defense, the following elements must be shown: (1) the (accused) was not at fault in creating the situation giving rise to the affray; (2) the (accused) has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) the (accused) must not have violated any duty to retreat or avoid the danger.' " *Marbury*, supra, at ¶ 13, quoting *State v. Melchior* (1978), 56 Ohio St.2d 15, 20-21.

{¶ 23} The first and third of the above-quoted elements of self-defense are

problematic; but the second element clearly fails. For this element, Hunter would have to prove, by a preponderance of the evidence, that her act of throwing the glass, which caused Smoot serious physical harm, was reasonably necessary to avoid death or great bodily harm to Hunter. On this subject, Hunter testified as follows:

{¶ 24} "Q. Let me ask you this. If you were worried that she [Smoot] was grabbing something and you threw that glass because you were worried about her grabbing something –

{¶ 25} "A. Uh-huh.

{¶ 26} "Q. – why would you throw that glass at the wall?

{¶ 27} "A. I threw it to keep her back.

{¶ 28} "Q. How is that going to keep her back if you throw the glass at the wall?

{¶ 29} "A. I have no clue."

{¶ 30} At no point did Hunter offer any evidence to show that her act of throwing the glass at the wall was reasonably necessary to avoid death or great bodily harm. Therefore, on the facts in evidence in this case, the defense Hunter presented to the jury – that the serious physical injury to Smoot was not a knowingly probable result of her act of throwing the glass at the wall – is inconsistent with a defense of self-defense.

{¶ 31} Because the defense of self-defense would have been inconsistent with the defense theory of the case, as exemplified by the evidence presented by the defendant, there is no reasonable probability that a defense of self-defense would have succeeded. Therefore, Hunter's trial counsel was not ineffective for having failed to argue self-defense to the jury, or for having failed to request a jury instruction on self-defense.

{¶ 32} Hunter's sole assignment of error is overruled.

## III

{¶ 33} Hunter's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

HALL, J., concurs.
FROELICH, J., concurs in judgment only.

Copies mailed to:

Mathias H. Heck
Timothy J. Cole
James S. Armstrong
Hon. Timothy N. O'Connell