[Cite as *State v. Reed*, 2021-Ohio-858.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Craig R. Baldwin, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| JUAN E. REED | : | Case No. 20 CAA 04 0021 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:          Appeal from the Court of Common
                                 Pleas Case No. 19 CR I 02 0116

JUDGMENT:                        Affirmed

DATE OF JUDGMENT:                March 18, 2021

APPEARANCES:

For Plaintiff-Appellee                   For Defendant-Appellant

R. JOSEPH VARVEL                         APRIL F. CAMPBELL
145 North Union Street                   46 ½ North Sandusky Street
Dealware, OH 43015                       Dealware, OH  43015

*Wise, Earle, J.*

{¶ 1}   Defendant-Appellant Juan E. Reed appeals October 28, 2019 judgment of conviction and sentence of the Delaware County Court of Common Pleas. Plaintiff-Appellee is the state of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   Before the events in this matter, Reed and A.S. had known one another for eight years. They lived together on and off, cared for each other's children, worked together, shared household duties, and had an on-again, off-again intimate relationship. Reed was without transportation, and used A.S.'s truck for work. A.S. often worked with Reed.

{¶ 3}   On February 12, 2019, the two woke up at Reed's home. After dropping their children off at school, Reed drove A.S's truck to their job for the day, painting apartment interiors at a complex in New Albany.

{¶ 4}   They stared work at 8:00 a.m., and were the sole workers at the site that day. During the afternoon, Reed took A.S.'s truck several times over her objection, staying away for longer periods of time on each occasion. On the final occasion, A.S. asked Reed to return her keys and an argument ensued. Reed refused to return the keys, and then began taunting her with the keys. He then grabbed A.S. by the neck and slammed her to the floor twice. Reed then straddled A.S. and began strangling her. A.S. fought her way free and tried to get away. Reed tried to trip her, but instead ended up kicking her in the left leg with his steel-toed work boots. He then once again grabbed her by the throat, slammed her to the floor, and dragged her into a closet where she lost consciousness. A.S. believed Reed was going to kill her.

{¶ 5}   When A.S. regained consciousness, Reed was gone. She ran outside to her truck and sat inside, but Reed still had her keys. When he showed up, she demanded her keys and told him he was not allowed in her truck. Reed ignored her, packed up his tools, got in the truck and began driving towards home. A.S, unfamiliar with the area where they were working, chose to remain with Reed.

{¶ 6}   But as he drove, Reed continued his assault on A.S. He grabbed her by the neck with his right hand and slammed her head against the passenger side window, the dashboard and the console cup holders. A.S. tried to call 911, but Reed took her phone from her. Once back home, as Reed got out of the truck, A.S. slid into the driver's seat and left.

{¶ 7}   The following day, A.S. had numerous bruises, a headache, nausea, and sensitivity to light. Additionally, her throat hurt and she was hoarse. She reported the incidents of the day before to Deputy Wooten of the Delaware County Sheriff's Department. Although she had not initially desired to seek medical attention, after Wooten advised A.S. that strangulation can cause serious injury, A.S. agreed to do so.

{¶ 8}   Physician's Assistant (PA) Janel Scarbrough saw A.S. at the Grady Hospital emergency room. Scarbrough gathered a history from A.S. and performed a head-to-toe examination. She noted A.S.'s voice was hoarse and raspy and that A.S. had difficulty swallowing. A.S. further had bruising around her eyes, under her chin, and on her left shin, as well as abrasion marks on her face and neck. Scarbrough believed the bruises were recent, having been inflicted within the past 24 hours. Given A.S.'s report of experiencing light sensitivity, a headache and nausea, Scarbrough believed A.S. had also suffered a concussion.

{¶ 9}  As a result of these events, on February 22, 2019, the Delaware County Grand Jury returned an indictment charging Reed with one count each of kidnapping, a felony of the first degree, felonious assault, a felony of the second degree, domestic violence, a felony of the fourth degree due to Reed's previous conviction for domestic violence, menacing by stalking, a felony of the of the fourth degree due to Reed's history of violence toward A.S. and others, and disrupting public services, a felony of the fourth degree.

{¶ 10} Reed pled not guilty to the charges and elected to proceed to a jury trial which began September 10, 2019.

{¶ 11} Before trial, however, the trial court held a hearing to address numerous motions filed by Reed. Relevant here, Reed filed a motion to prohibit the state from admitting other acts evidence including misconduct or criminal convictions which were not the subject of the instant indictment. The trial court denied this motion finding the other acts the state intended to introduce pertained to the elements of menacing by stalking specifically, establishing a pattern of conduct against A.S. and additionally establishing Reed's history of violence in order to enhance the level of the offense. As such, the trial court found the evidence was not subject to Evid.R 404(B).

{¶ 12} Reed also filed a motion to compel the state to comply with Crim.R. 16(K) by providing written reports for its expert witnesses. The experts Reed referred to included PA Scarbrough. The trial court denied the motion, finding treating medical professionals may be called at trial to testify as to their personal observations and need not provide written report.

{¶ 13} Following a 3-day trial, the jury found Reed guilty of domestic violence and menacing by stalking and acquitted him of the balance of the charges. Reed was sentenced to a term of community control.

{¶ 14} Reed filed an appeal and the matter is now before this court for consideration. Reed raises four assignments of error as follow:

I

{¶ 15} "REED'S CONVICTIONS SHOULD BE REVERSED BECAUSE HIS TRIAL COUNSEL WAS INEFFECTIVE IN A MANNER THAT PREJUDICED REED.

A. CONSISTENT FAILURE TO OBJECT TO ARGUMENT AND TESTIMONY CONCERNING INADMISSIBLE PRIOR BAD ACTS.

B.      FAILURE TO OBJECT TO JANEL SCARBROUGH TESTIFYING AS AN EXPERT WITHOUT BEING QUALIFIED BY THE TRIAL COURT AS UNDER EVID.R. 104(A), WITHOUT A REPORT UNDER CRIM.R. 16(K), AND TESTIFYING SUBSTANTIVELY ABOUT PRIOR ACTS OF VIOLENCE THAT WERE INADMISSIBLE EVID.R. 403."

II

{¶ 16} "THE JURY'S DECISION TO FIND REED GUILTY OF FELONY DOMESTIC VIOLENCE AND MENACING BY STALKING SHOULD BE VACATED, BECAUSE THE EVIDENCE WEIGHED MANIFESTLY AGAINST CONVICTING REED OF EACH COUNT."

III

{¶ 17} "PLAIN ERROR OCCURRED WHEN THE TRIAL COURT ALLOWED THE STATE TO SATURATE REED'S TRIAL WITH EVIDENCE BOTH IRRELEVANT AND UNFAIRLY PREJUDICIAL TO THE OFFENSES FOR WHICH REED WAS TRIED."

IV

{¶ 18} "REED WAS DENIED HIS RIGHT TO A FAIR TRIAL THROUGH CUMULATIVE ERROR."

I

{¶ 19} In his first assignment of error, Reed argues his counsel rendered ineffective assistance by failing to object to inadmissible prior bad acts, and for failing to object to PA Scarbrough testifying as an expert without being qualified and tendered as such by the state, and without having submitted a written expert witness report before trial. We disagree.

{¶ 20} To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate: (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694, 104 S.Ct. 2052.

{¶ 21} Because there are countless ways to provide effective assistance in any given case, judicial scrutiny of a lawyer's performance must be highly deferential. *Strickland*, 466 U.S. 668 at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674. "Decisions on strategy and trial tactics are granted wide latitude of professional judgment, and it is not the duty

of a reviewing court to analyze trial counsel's legal tactics and maneuvers." *State v. Quinones*, 8th Dist. Cuyahoga No. 100928, 2014-Ohio-5544, ¶ 18.

Prior Bad Acts

{¶ 22} Reed first faults his counsel for failing to object to the state's use of a 2012 conviction for disorderly conduct which involved Reed pushing and strangling his then girlfriend K.L., and threatening to burn her house down. Reed further faults counsel for failing to object to the state's use of Reed's history of violence with A.S. Reed argues all of this testimony amounted to inadmissible 404(B) evidence. We disagree.

{¶ 23} Evidence Rule 404(B) provides,

> (B) Other crimes, wrongs or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In criminal cases, the proponent of evidence to be offered under this rule shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

{¶ 24} As noted by the state, Reed was charged with menacing by stalking, a fourth degree felony, which required the state to prove Reed engaged in a pattern of

conduct which caused A.S. to believe that Reed would cause her physical harm or mental distress AND that Reed had a history of violence against A.S. or any other person. It is the history of violence against the victim or any other person which enhances the level of the offense to a fourth degree felony. Thus neither evidence of Reed's 2012 conviction, nor his patterns of conduct against A.S. were introduced as prior bad acts, but rather as elements of the crime with which Reed was charged and therefore which the state was required to prove. Nor was the state required, as Reed argues, to choose between the pattern of behavior conduct and the historical conduct as it had to prove both. We therefore find counsel was not ineffective for failing to object to the admission of this evidence.

### Expert Witness Testimony

{¶ 25} Reed makes several arguments in regard to PA Scarbrough's testimony. He first faults counsel's failure to object to Scarbrough testifying as an expert when the state never qualified nor tendered her as such. Next he faults counsel for failing to object to Scarbrough's testimony regarding the age of A.S.'s bruises without first having provided and expert witness report to the defense per Crim.R. 16(K). Finally, Reed faults his counsel for failing to object to portions of Scarbrough's testimony which were unrelated to medical diagnosis and treatment.

{¶ 26} Before testifying regarding A.S.'s emergency room visit, Scarbrough testified she has been a physician's assistant for 15 years with 14 of those years spent working in emergency medicine. She outlined her education, including a bachelor's degree in science as a physician's assistant and a master's degree in emergency medicine. She further testified she is required to engage in yearly continuing education.

Transcript of trial, volume II, (T.(II) ) 261-262. During her time in emergency medicine she has treated approximately 90 people presenting for strangulation. T.(II) 300.

{¶ 27} In *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 115, the Ohio Supreme Court held that "[w]hile the state never formally tendered [a witness] as an expert, defense counsel never challenged his qualifications to testify and thus waived all but plain error" under Crim.R. 52(B). The *Drummond* Court reasoned that the witness "was qualified to testify as an expert about gang-related matters" under Evid.R. 702, and therefore any error was harmless.

{¶ 28} So too here. Because PA Scarbrough would have qualified as an expert had the state proffered her as one, Reed cannot show prejudice and his counsel's failure to object to her testimony was not ineffective.

Crim.R. 16(K)

{¶ 29} We next address Reed's Crim.R. 16(K) argument. That rule provides:

> An expert witness for either side shall prepare a written report summarizing the expert witness's testimony, findings, analysis, conclusions, or opinion, and shall include a summary of the expert's qualifications. The written report and summary of qualifications shall be subject to disclosure under this rule no later than twenty-one days prior to trial, which period may be modified by the court for good cause shown, which does not prejudice any other party. Failure to disclose the written report to opposing counsel shall preclude the expert's testimony at trial.

{¶ 30} It was not necessary for Scarbrough to testify as an expert witness. It is well established that a treating medical professional may be called at trial to testify as an observer of a patients' physical condition and not as expert retained in anticipation of litigation. *Henry v. Richardson*, 193 Ohio App.3d 375, 2011-Ohio-2098, 951 N.E.2d 1123 ¶ 33; *Fischer v. Dairy Mart Convenience Stores, Inc.*, 77 Ohio App.3d 543, 602 N.E.2d 1204 (8th Dist.1991). Evid.R. 701, testimony by a lay witness, allows treating physicians to render opinions based upon their personal observations and perceptions. See *Williams v. Reynolds Rd. Surgical Ctr.*, 6th Dist. No. L-02-1144, 2004-Ohio-1645, *3.

{¶ 31} While the state argues Scarbrough testified as a fact witness and not an expert witness, we note the trial court determined that based on Scarbrough's testimony, it was required to provide the jury with an instruction regarding expert witnesses and the state did not disagree. T. (III) 942.

{¶ 32} Even if Scarbrough did testify as an expert, however, the medical records pertaining to A.S.'s emergency room visit were provided to Reed and Reed does not argue Scarbrough testified inconsistently with those records. Rather, Reed takes issue with Scarbrough's testimony indicating the injuries on A.S.'s body, specifically the age of the bruises and lack of major bruising to her neck, were consistent with the history provided by A.S.

{¶ 33} In a factually similar case, *State v. Fetty*, 11th Dist. Portage No. 2011-P-0091, 2012-Ohio-6127, 2012 WL 6727343, the court found, "[b]ecause the victim's medical records * * * had been provided to the defense, this appears to be a case where the disclosure of the medical records in lieu of an expert report adequately provided the

requesting party with the information it needed." *Id.* ¶ 45. The court found that the treating medical professional testified consistently with the medical records and did not testify as to the cause of the victim's injury. The court concluded the defendant "cannot claim he was prejudiced by a lack of Crim.R. 16(K) report, as he was not ambushed or thwarted in his ability to cross-examine the physician—a situation Crim.R. 16(K) is intended to prevent." *Id.* at ¶ 46.

{¶ 34} So too here. Reed was provided with A.S.'s medical records, pertaining to her visit with A.S. Scarbrough. Scarbrough was called by the state to testify about her personal observations while treating A.S., all of which were contained in the medical record generated by Scarbrough. State's Exhibit 11. Scarbrough did not give any opinion as to who or what caused A.S.'s injuries, only that the state of the injuries were consistent with having taken place within the past 24 hours, and that based on her experience she would not expect to see much neck bruising from strangulation. Trial counsel was therefore not ineffective for failing to object to this testimony.

Testimonial Hearsay

{¶ 35} Finally, Reed argues counsel was ineffective for failing to object to portions of Scarbrough's testimony that had nothing to do with the injuries sustained by A.S. Specifically, Reed points to the narrative given by A.S. regarding the events of the previous day as well as the tumultuous and violent nature of the relationship between her and Reed.

{¶ 36} The Confrontation Clause of the Sixth Amendment to the U.S. Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *." In *Crawford v. Washington*, 541 U.S. 36,

124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court held that testimonial statements of a witness who does not appear at trial may not be admitted or used against a criminal defendant unless the declarant is unavailable to testify, and the defendant has had a prior opportunity for cross-examination.

{¶ 37} In *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775, the Ohio Supreme Court applied the "primary purpose" test, in a case involving victim statements made to a social worker at a child advocacy center. The Supreme Court concluded that statements made primarily for forensic or investigative purposes are testimonial and thus inadmissible under the Confrontation Clause when the declarant is unavailable. However, the Court found statements made for diagnosis and treatment are nontestimonial and thus admissible without offending the confrontation clause. *Id.* at paragraphs one and two of the syllabus.

{¶ 38} We find the portions of PA Scarbrough's testimony discussing A.S.'s description of the previous day's events which had nothing to do with her injuries, as well as the history of violence between Reed and A.S. were testimonial statements to which counsel should have objected. It is well established, however, that the Confrontation Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it. See *State v. Bell*, 5th Dist. Stark No. 2013-CA-00110, 2014-Ohio-663 at ¶ 13 citing *State v. Siler*, 5th Dist. Ashland No. 02 COA 028, 2005-Ohio-6591, ¶ 51, quoting *State v. Marbury,* 2d Dist. Montgomery No. 19226, 2004-Ohio-1817, ¶ 38, citing *Crawford* at 59, f.n. 9.

{¶ 39} Here, the declarant, A.S., was present at trial and was subject to cross examination by Reed's counsel. We therefore find any error harmless. Because Reed

cannot demonstrate prejudice, we find his counsel was not ineffective for failing to object to Scarbrough's testimony.

{¶ 40} The first assignment of error is overruled.

II

{¶ 41} In his second assignment of error, Reed argues his convictions for domestic violence and menacing by stalking are against the manifest weight of the evidence. We disagree.

{¶ 42} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶ 43} Reed argues the evidence that he did not commit the acts was more believable and persuasive than evidence that he did. Reed points to two specific reasons supporting his argument.

{¶ 44} First Reed points to the testimony of Dublin City Police Officer Larry Gatton who was summonsed to Reed's home in February 2017 to remove A.S. from his house for destroying property. Apparently A.S. was angry because she suspected Reed was

seeing someone else. A.S. told Gatton Reed had attacked her. A third person present told Gatton A.S. had punched herself. T(II) 342-353. No charges came of the incident.

{¶ 45} Reed next points to the testimony of his boss Alejandro Roces Rodriquez who was allegedly present during a February 2019 incident between Reed and A.S. during which the two argued at a job site and Reed punched A.S. in the head. Rodriquez testified he witnessed the entire incident and Reed never punched A.S. T(III) 605-628. We note, however, that the state presented testimony from Jerry Jervis, a resident of the trailer park where the three were working that day. Jervis testified he witnessed A.S. running out of the trailer next door to him with Reed right behind her. He then watched as Reed hit A.S., sending her rolling off the deck. According to Jervis, Rodriquez came out of the trailer after Reed hit A.S. and split them up. T(II) 327-329.

{¶ 46} While this testimony put the credibility of A.S., Rodriquez, and Jervis at issue, this court must afford the decision of the trier of fact concerning credibility issues the appropriate deference. We will not substitute our judgment for that of the trier of fact on the issue of witness credibility unless it is patently clear that the fact finder lost its way. *State v. Ahmed*, 5th Dist. No. 2007-CA-00049, 2008-Ohio-389, 2008 WL 307711, ¶ 28 citing *State v. Parks*, 3rd Dist. No. 15-03-16, 2004-Ohio-4023, at ¶ 13, citing *State v. Twitty*, 2nd Dist. No. 18749, 2002-Ohio-5595, at ¶ 114.

{¶ 47} Upon review of the record it is not patently clear that this jury lost its way in making its credibility determinations, nor was the result so unreliable as to create a manifest miscarriage of justice. The second assignment of error is therefore overruled.

III

{¶ 48} In his third assignment of error Reed again raises the admission of his 2012 conviction for disorderly conduct and PA Scarbrough's expert testimony and argues admission of this testimony amounts to plain error. Reed also takes issue with a mention by a state's witness that Reed was arrested on a warrant for the instant charges and taken to jail for an interview. Reed argues the admission of this testimony is plain error.

{¶ 49} An error not raised in the trial court must be plain error for an appellate court to reverse. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978) at paragraph one of the syllabus; Crim.R. 52(B). In order to prevail under a plain error analysis, Reed bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. *Id.* at paragraph two of the syllabus. Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus.

{¶ 50} We have addressed the admission of Reed's 2012 conviction and PA Scarbrough's testimony in Reed's first assignment of error. Having found no error in counsel's failure to object to such testimony, we also find no plain error was committed in its admission.

{¶ 51} As for Reed's argument that the state elicited testimony concerning Reed's arrest and the fact that he was in jail, we have examined Reeds transcript references and find they pertain to testimony by Delaware County Sheriff's Detective Jeff Bessinger.

{¶ 52} Bessinger testified because he could not immediately locate Reed, a warrant issued for his arrest. He further testified after Reed had been arrested the previous day he "was brought into the Delaware County Jail, and I interviewed him there."

T (II) 520. The state further inquired if Reed had spent the night in the Delaware County Jail and Bessinger stated he did not know. T (II) 521.

{¶ 53} While we find this testimony wholly irrelevant, we cannot say it rises to the level of plain error. Reed bears the burden of demonstrating the outcome of his trial clearly would have been different but for the admission of this testimony, and has failed to explain how this testimony impacted the verdict reached by the jury.

{¶ 54} The third assignment of error is overruled.

IV

{¶ 55} In his final assignment of error, Reed argues he was denied a fair trial due to cumulative error as set forth in his first three assignments of error.

{¶ 56} In *State v. Brown*, 100 Ohio St.3d 51, 2003-Ohio-5059, 796 N.E.2d 506, the Ohio Supreme Court recognized the doctrine of cumulative error. However, where we have found the trial court did not err, cumulative error is inapplicable. *State v. Carter*, 5th Dist. Stark No. 2002CA00125, 2003-Ohio-1313 at ¶ 37.

{¶ 57} We have found no error in Reed's preceding three assignments of error. The doctrine of cumulative error is therefore inapplicable.

{¶ 58} The final assignment of error is overruled.

{¶ 59} The judgment of the Delaware County Court of Common Pleas is affirmed.


By Wise, Earle, J.

Baldwin, P.J. and

Wise, John, J. concur.



EEW/rw