[Cite as *State v. Stutler*, 2020-Ohio-4562.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| DANIEL R. STUTLER | : | Case No. 2020CA00020 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:        Appeal from the Court of Common Pleas, Case No. 2019CR1759



JUDGMENT:        Affirmed



DATE OF JUDGMENT:        September 22, 2020



APPEARANCES:

For Plaintiff-Appellee        For Defendant-Appellant

JOHN D. FERRARO        BERNARD L. HUNT
PROSECUTING ATTORNEY        2395 McGinty Road NW
STARK COUNTY, OHIO        North Canton, OH  44720

BY:   KATHLEEN O. TATARSKY
      110 Central Plaza South - Suite 510

Canton, OH 44702
*Wise, Earle, J.*

{¶ 1}   Defendant-Appellant Daniel R. Stutler appeals the December 23, 2019 judgment of conviction and sentence of the Stark County Court of Common Pleas. Plaintiff-Appellee is the state of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   On February 25, 2019, the 9-year-old child victim, L.M, lived in Canton Ohio with her mother M.P, her brother, her mother's friend Virginia, and Virginia's infant son.

{¶ 3}   On the evening of February 25, M.P's ex-girlfriend Dana was visiting. The two got into an argument. In an effort to distract herself from that situation, M.P invited her friend Ronald Cohoon over to play cards. Cohoon arrived shortly thereafter along with his step-father Stutler. The home has three upstairs bedrooms which were used by the children and Virginia. When Cohoon and Stutler arrived L.M was upstairs in her bedroom, her brother was in his bedroom, and Virginia and her son were in their bedroom. Dana stayed in the living room.

{¶ 4}   M.P and Coohon were playing cards in the dining room for about half an hour when Stutler went upstairs to look at a ceiling repair he and Coohon had completed sometime previously. Shortly after Stutler went upstairs, L.M came downstairs and asked to speak to her mother privately. They went upstairs to talk. M.P noticed L.M "looked like she'd seen a ghost" and was "frantic and stuttering over her words." L.M advised M.P Stutler had touched her inappropriately.

{¶ 5}   With this news M.P went back downstairs and told Coohon he needed to talk to L.M. She grabbed a knife from the kitchen intending to harm Stutler. Dana intervened and asked what was wrong. M.P told Dana what had transpired and asked her

to get Stutler out of the house. Dana went upstairs to find L.M on her bed crying and Cohoon just standing there. She advised Cahoon that he and Stutler needed to leave.

{¶ 6}   After Coohon and Stutler left, M.P took L.M to Mercy Medical Hospital where she tearfully advised hospital staff L.M "needed to be seen and a rape kit done." Mercy Medical transported M.P and L.M to Akron Children's Hospital for treatment.

{¶ 7}   At Akron Children's Hospital, social worker Amanda Bright spoke with L.M and M.P separately. Bright collected a narrative from L.M after which an evidence collection kit or "rape kit" was completed. She then referred the matter to the Children's Advocacy Center in Canton and the Canton Police Department. The evidence collection kit was submitted to the Richfield Bureau of Criminal Investigation (BCI) for testing and analysis.

{¶ 8}   L.M was seen at the Canton Children's Advocacy Center on March 7, 2019. There, she was interviewed by a social worker with special training in conducting forensic interviews with children. The interview was recorded. While L.M was being interviewed, Akron Children's Hospital nurse practitioner Katie Nduati watched the interview on a screen in another room. Her purpose was to gather information for L.M's medical diagnosis and treatment without L.M needing to repeat herself.  L.M disclosed that Stutler touched her vaginal area with his hands twice. Once on the outside of her clothes and once under her underwear, skin to skin "and rubbed it with his two fingers." She further disclosed Stutler grabbed her buttocks on the outside of her clothes.

{¶ 9}   Following L.M's interview, Nduati conducted a physical exam. Nduati ultimately found L.M's evaluation consistent with child sexual abuse based upon the

history given by L.M, listed her diagnosis as child sexual abuse, and referred L.M to counseling.

{¶ 10} Canton Police Detective Joe Mongold was assigned to investigate this matter. He obtained a warrant to swab Stutler's mouth for the purposes of DNA comparison. The swabs were sent to the BCI.

{¶ 11} On September 19, 2019, the Stark County Grand Jury returned an indictment charging Stutler with two counts of gross sexual imposition pursuant to R.C 2907.05(A)(4), one count for touching L.M's vagina and once count for touching her buttocks.

{¶ 12} Stutler pleaded not guilty to the charges and elected to proceed to a jury trial. Before trial, the state filed a motion to determine the admissibility of statements made by L.M during her forensic interview. Counsel for Stutler filed a motion to determine L.M's competency to testify. On November 15, 2019, a hearing was held on these motions.

{¶ 13} Nduati testified during the hearing and explained that she uses portions of the forensic interview for treatment and diagnosis of the alleged victim and did so in this matter. Following Nduati's testimony, L.M was interviewed by the court. At the conclusion of the hearing the trial court directed the state to develop a transcript of the interview and then consult with Nduati and counsel for Stutler, to narrow down which statements the state believed were admissible. The court further found L.M competent to testify.

{¶ 14} Stutler's two-day trial began on December 10, 2019. Before trial began, counsel for the state indicated he, Nduati, and counsel for Stutler had gone over a transcript of L.M's forensic interview. Nduati noted the portions she relied upon for diagnosis and treatment. The state and defense counsel then reviewed her notations and

further redacted portions per agreement between them as to what statements were testimonial and which were not. The redacted transcript with the statements the parties deemed admissible highlighted was marked as Court's Exhibit 1.

{¶ 15} During Nduati's trial testimony, the state played the portions of L.M's recorded interview upon which the parties had previously agreed could be considered for medical diagnosis purposes. Counsel for Stutler objected and stated: "I wouldn't say that I agreed what parts are non-testimonial. I would say I am making an overall objection again because I think it's all testimonial. However * * *if the court is going to overrule * * * my characterization, then I would agree that [the state] and I have agreed on what would be proper under the judge's ruling."

{¶ 16} At trial, L.M testified she calls Stutler "Gramper" and remembered the night in February when he was last at her house. She stated Gramper made her sit in his lap in the hallway upstairs and she did not feel good about that. Asked if anything else happened after she sat in his lap, she replied "I don't remember." L.M stated she did not "really remember the stuff because I don't talk about it." Asked about what happened at the hospital L.M stated they swabbed her "back and my front" explaining that her back and her front are the body parts she uses to go to the bathroom. Asked why those areas were swabbed L.M stated because that is where she told them "something happened."

{¶ 17} BCI forensic scientist Andrew Sawin testified he analyzed L.M's evidence collection kit. Sawin found a small amount of male DNA on one of L.M's vaginal swabs as well as swabs taken from the interior crotch and interior back panel of L.M's underwear. However, there was not enough of the male DNA for Sawin to make any comparisons. The swabs were therefore forwarded to BCI forensic scientist Hallie Dreyer. Dreyer

testified she performed Y-STR testing on the swabs. Y-STR testing is a male-specific test which attempts to isolate the male DNA present in a sample. In this matter, however, there was not enough male DNA present to include or exclude any specific individual.

{¶ 18} Cahoon testified on behalf of his step-father. He claimed Stutler was never out of his sight the entire time they were in L.M's home.

{¶ 19} The jury deliberated for eleven minutes before returning a verdict of guilty to count one, the hand to skin contact with L.M's vagina, and not guilty of count two, contact with L.M's buttocks over her clothes. Stutler was subsequently sentenced to five years incarceration and classified as a Tier II sexual offender.

{¶ 20} Stutler timely appealed and the matter is now before us for consideration. He raises two assignments of error as follow:

I

{¶ 21} "THE TRIAL COURT ERRED IN THE ADMISSION OF STATEMENTS MADE FROM A FORENSIC INTERVIEW, AS THEY ARE PROHIBITED BY EVIDENCE RULE 403 (A) AND VIOLATES THE DEFENDANT'S CONFRONTATION CLAUSE RIGHTS UNDER THE SIXTH AMENDMENT AND OHIO CONSTITUTION, ARTICLE 1, SECTION 10."

II

{¶ 22} "THE TRIAL COURT'S FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."

I

{¶ 23} In his first assignment of error Stutler argues the statements made by L.M to the forensic interviewer were not made for purposes of medical diagnosis and treatment. Rather, Stutler argues the statements were testimonial in nature, and their admission at trial constitute a violation of his right to confrontation. He further argues the statements were inadmissible pursuant to Evid.R 403(A). We disagree.

Confrontation Clause

{¶ 24} The Confrontation Clause of the Sixth Amendment to the U.S. Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *." In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court held that testimonial statements of a witness who does not appear at trial may not be admitted or used against a criminal defendant unless the declarant is unavailable to testify, and the defendant has had a prior opportunity for cross-examination.

{¶ 25} In *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775, the Ohio Supreme Court applied the "primary purpose" test, in a case involving victim statements made to a social worker at a child advocacy center. The Supreme Court concluded that statements made primarily for forensic or investigative purposes are testimonial and thus inadmissible under the Confrontation Clause when the declarant is unavailable. However, the Court found statements made for diagnosis and treatment are nontestimonial and thus admissible without offending the confrontation clause. *Id.* at paragraphs one and two of the syllabus.

{¶ 26} In the matter before us, it is undisputed that the child victim took the stand, testified and was subject to cross-examination. It is well established that the Confrontation

Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it. See *State v. Bell*, 5th Dist. Stark No. 2013-CA-00110, 2014-Ohio-663 at ¶ 13 citing *State v. Siler*, 5th Dist. Ashland No. 02 COA 028, 2005-Ohio-6591, ¶ 51, quoting *State v. Marbury*, 2d Dist. Montgomery No. 19226, 2004-Ohio-1817, ¶ 38, citing *Crawford* at 59, f.n. 9.

{¶ 27} What is more, before trial, counsel for Stutler and the state reviewed L.M's forensic interview and agreed between themselves as to what parts could be considered for purposes of medical diagnosis and treatment. Nothing was presented to the jury that had not already been approved by Stutler. T. 185-186, Court's exhibit 1.

{¶ 28} For these reasons, we reject Stutler's Confrontation Clause argument.

### Evid.R.403(A)

{¶ 29} Next, Stutler argues L.M's statements to the forensic interviewer were admitted in violation of Evid.R 403(A). The rule provides exclusion of relevant evidence is mandatory "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

{¶ 30} In our examination of the record, we note that at no point did counsel for Stutler object to the admission of this evidence pursuant to Evid.R 403(A). Because trial counsel did not object the admission of the forensic interview on 403(A) grounds, Stutler has waived any error based on Evid.R. 403(A) absent plain error. *State v. Johnson*, 10th Dist. Franklin No. 05AP-12, ¶ 17, citing *State v. Tibbetts*, 92 Ohio St.3d 146, 160-161, 749 N.E.2d 226 (2001).

{¶ 31} An error not raised in the trial court must be plain error for an appellate court to reverse. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978) at paragraph one of

the syllabus; Crim.R. 52(B). In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. *Id.* at paragraph two of the syllabus.  Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."  *Id.* at paragraph three of the syllabus.

{¶ 32} Stutler has neither raised nor argued plain error. We nonetheless find L.M's statements to the forensic interviewer were not unfairly prejudicial to Stutler. As discussed above, the L.M took the stand, testified, and was subject to cross examination. Although she was unable to testify with the specificity of her initial disclosure, she was able to state that while she was at the hospital, hospital staff swabbed her "front and back" -- body parts she explained she uses to "go to the bathroom" --  because that is where she told hospital staff "something happened" with Stutler. Transcript of trial (T) 130-131. During her forensic interview L.M told the interviewer -- referring to her "cookie" which she explained she uses to go to the bathroom -- "* * * he um touched it with his hand like this on my pants, and then he went inside my pants and rubbed it with his two fingers." L.M further explained this touching was done "[i]n my underwear." Court's exhibit 1 at 10.

{¶ 33} Given the forgoing, we cannot say that the outcome of Stutler's trial clearly would have been different but for the admission of the redacted forensic interview. Accordingly, we reject Stutler's Evid.R 403(A) argument.

{¶ 34} The first assignment of error is overruled.

II

{¶ 35} In his second assignment of error, Stutler argues his conviction is against the manifest weight and sufficiency of the evidence. We disagree.

{¶ 36} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997).  The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."  *Martin* at 175.

{¶ 37} Stutler was convicted of one count of gross sexual imposition pursuant to R.C. 2907.05(A)(4). This section required the state to prove Stutler had sexual contact with L.M, that L.M was not Stutler's spouse, and L.M was less than 13 years of age at the time of the offense, whether or not Stutler knew L.M's age.

{¶ 38} Stutler argues there was no credible evidence presented at trial to support a finding that he had sexual contact with L.M. Specifically he argues the DNA testing results were inconclusive, that L.M used the word "rape" at Akron Children's Hospital, but

could not explain to staff what the word meant, and that Cohoon testified Stutler never left his sight on the evening in question.

{¶ 39} Sexual contact is defined as the touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or if the person is female, a breast, for the purpose of sexually arousing or gratifying either person. R.C. 2907.01(B).

{¶ 40} The trier of fact may infer from the evidence presented that the motivation for a defendant's actions was sexual arousal or gratification by his contact with those areas of the body described in R.C. 2907.01. *State v. Cobb*, 81 Ohio App.3d 179, 185, 610 N.E.2d 1009 (9th Dist.1991).

{¶ 41} L.M testified she was 9 years old the day of trial. T. 123. She told the forensic interviewer shortly after the allegations arose that Stutler touched her "cookie" with his hand, under her underwear, and "rubbed it with his two fingers." Court's exhibit 1 at 10. At trial, L.M was able to say the hospital swabbed her "front and back" because that is where she told them "something happened" with Stutler. T. 130-131

{¶ 42} The testimony of one witness, believed by the trier of fact is sufficient to prove any fact at issue. *State v. Frazier*, 5th Dist. Delaware No. 04CAC10071, 2005-Ohio-3766, ¶ 14. These statements by L.M, if believed by the trier of fact were sufficient to support a finding of sexual contact.

{¶ 43} Stutler further argues there was no conclusive DNA evidence to prove L.M's allegations. But R.C. 2907.05(A)(4) does not require the state to produce conclusive DNA evidence in order to support a conviction, nor does its absence, therefore, render Stutler's conviction against the manifest weight of the evidence.

{¶ 44} Stutler also states, without clarifying argument, that L.M told hospital staff she was raped, but upon questioning by staff it became clear L.M did not know the meaning of the term. The jury heard this evidence and was free to weigh the information as it saw fit. Further, as with DNA evidence, R.C. 2907.05(A)(4) does not require the state to prove a child victim understands the legal definition of rape, nor does the child's ignorance of the term weigh against the manifest weight of the evidence.

{¶ 45} Finally, as to Stutler's argument that Cohoon testified Stutler never left his sight on the evening in question, a jury is free to believe all, part, or none of the testimony of each witness. *State v. Harrison*, 63 Ohio App.3d 58, 62, 577 N.E. 1144 (8th Dist. Cuyahoga 1989). The jury was therefore free to believe or discount Cohoon's testimony.

{¶ 46} We find the state produced sufficient evidence to support Stutler's conviction, and further find his conviction is not against the manifest weight of the evidence. Accordingly, the second assignment of error is overruled.

{¶ 47} The judgment of the Stark County Court of Common Pleas is affirmed.


By Wise, Earle, J.

Gwin, P.J. and

Delaney, J. concur.



EEW/rw